SARAH A. WILSON, ADMINISTRATRIX OF CLARK S. WILSON, DECEASED, RESPONDENT, v. DIRECTOR GENERAL OF RAILROADS, APPELLANT.

Argued November 18, 1920—Decided February 28, 1921.

The driver of an engine on which plaintiff's decedent was engaged as a fireman, while engaged in drilling cars to make up a train, placed a car on a side track so near a switch as to leave one foot clearance between it and the engine when it passed along an adjacent track. It was sufficient to clear the engine but not to allow the fireman to extend his head with safety beyond the side of the cab in which he was. In backing the engine past the car for the third time the head of the fireman came in contact with the car, while he was presumably in the performance of his duty, and he was killed. When the engineer attempted to pass the car the first time he asked the fireman whether the engine would clear, and he replied that it would. The decedent had no control over fixing the location of the car, that was done by the engineer on a signal from the brakeman whose duty it was to give it. *Held*, that whether the fireman, under his contract of employment, assumed the risk of such an accident was a jury question, and that it could not be said as a matter of law that he conclusively assumed the risk of it.

---

On appeal from the Supreme Court.

For the appellant, *Bourgeois & Coulomb*.

For the respondent, *James Mercer Davis*.

The opinion of the court was delivered by

BERGEN, J.   This action was brought under the Federal Employers' Liability act, and the principal question to be considered and disposed of is whether the plaintiff's intestate, as employe of defendant, assumed the risk of the accident which caused his death, which is the basis of this suit, for if he did, as a matter of law, then defendant was entitled to a direction of a verdict in its behalf as requested of the court and its refusal was error. If, on the other hand, the injury was due to defendant's negligence, the risk of which was not assumed by the plaintiff but to which he contributed by his acts, the defendant would not be entitled to a direction but to have plaintiff's contributory negligence considered by the jury in mitigation of damages.

The pertinent facts to be inferred from the evidence are: That the engine on which the decedent was employed was engaged in drilling cars to and from side tracks at Freehold, New Jersey, in order to make up a train; that the decedent was a fireman on the engine and riding in the cab on the proper side of the engine to perform the duties assigned to him. The crew engaged in the drilling operations, in addition to the decedent, consisted of an engineer, conductor, two brakemen and a flagman; that the conductor of the train had the orders to be observed at each station relating to cars to be taken up and put in the train; that in making up the train it was necessary to change the location of certain cars, and in doing this a car of coal was put on a side track by "kicking" it back, but it did not go far enough, and, as the engineer testified, "So we shoved it down further. Then we got the signal from the brakeman and went ahead"—that is, the brakeman determined the location, which necessarily included the amount of clearance that would be left between it and cars running on the track from which it had just been moved; that the engineer passed this car along the adjacent track during the drilling operations twice before the decedent was struck; that the first time the engine was backed past this car the engineer asked the decedent whether they cleared all

right, and he said it was all right; that in backing past this
car the third time decedent made an outcry and the engineer
stopped the engine, went over to the fireman's cab and found
the head of the decedent hanging out of the cab, having
suffered the injuries which caused his death; that the head
was nearly severed from the body, the left side mashed and
the right scratched, "just as though it had been rolled;" that
the clearance was about twelve inches wide; that the night
was very dark, and no light on the car to indicate its loca-
tion. From this a jury might find that the car was placed
on the siding so that at the end nearest the switch there was
a clearance of twelve inches; that decedent had no control
over placing the car; that he knew that there was a clearance
and so reported to the engineer, but there was no evidence of
his knowledge of the extent of the clearance of which, per-
haps, he could not well judge owing to the darkness. We
think a jury might properly infer that defendant's servant
was negligent in placing the car so near the switch that de-
cedent while passing it on the engine, engaged in the per-
formance of his duty, might come in contact with it, and
that such negligent act was not a risk which decedent as-
sumed, for he was entitled to a safe place in which to work.
The brakeman who placed the car knew that the engine was
drilling cars and likely to pass the car in question; that de-
cedent's duty required him to watch for signals and that such
duty at times required the fireman to extend his head beyond
the edge of the cab, and was chargeable with knowledge that
if the car was given so narrow a clearance that if decedent
kept the proper lookout for signals that what did would likely
happen. It was for the jury to say whether under the cir-
cumstances the decedent had knowledge of the dangerous con-
ditions thus negligently created by the defendant and with
such knowledge assumed the risk of injury by putting his
head out of the cab not more than twelve inches in watching
for signals. There was evidence from which the jury might
infer that decedent was not at the place when the car was
located; that the night was dark and that he knew there was

sufficient clearance to pass the engine, but what he saw or knew of the extent of the clearance beyond the matter to which his attention was directed by the engineer does not appear, nor does it appear that he knew that the clearance was limited to less than ten or twelve inches, thereby creating an obvious danger which it was his duty to avoid. It is not enough to show that the decedent had observed that the clearance was sufficient to allow the engine to pass as a basis for charging the decedent, as a matter of law, with knowledge of the extent of the clearance and the assumption of the risk of the danger of extending his head out of the side of the cab a distance of one foot. To justify a direction of a verdict for the defendant on the ground of the assumption of risk, the proof ought to show conclusively that the decedent knew, or ought to have known, that the clearance was so narrow that it was dangerous to use it in the performance of his duties. Such a situation does not so conclusively appear in this case as to justify a direction for the defendant. If it should be said that the decedent was guilty of contributory negligence, that matter was properly disposed of by the court. The case of *Southern Pacific Co.* v. *Berkshire, 41 Sup. Ct. Rep.* 162, is not applicable to the facts in this case, for there the object causing the injury was fixed and permanent, a part of the regular appliances of the railroad of which the injured person had had knowledge for a long period and it was not the result of a special act of negligence, or a dangerous situation suddenly created of which the decedent may have had imperfect knowledge, as in the case under consideration. There was no error committed by the trial judge in refusing to direct for the defendant on the ground of assumption of risk. It is argued by the appellant that the deceased was not engaged in interstate commerce. We think the evidence is plenary that the train on which he was working was engaged in moving interstate commerce. This result renders it unnecessary to consider the other points raised by the appellant, as most of them are based on the question of assumption of risk.

The judgment will be affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, ACKERSON, JJ.    9.

*For reversal*—PARKER, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.    7.